# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00734-CV

**St. David's Healthcare Partnership, L.P., LLP d/b/a St. David's Hospital; and
St. David's Community Health Foundation, Appellants**

**v.**

**Genaro Esparza, Jr., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-09-001336, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

St. David's Healthcare Partnership and St. David's Community Health Foundation
(collectively, "St. David's") bring this interlocutory appeal from the trial court's order denying their
motion to dismiss under chapter 74 of the civil practice and remedies code. *See* Tex. Civ. Prac.
& Rem. Code Ann. §§ 74.001-.507 (West 2005 & Supp. 2009). St. David's alleges that appellee
Genaro Esparza, Jr.'s claims for negligence and premises liability are in fact health care liability
claims subject to chapter 74, and that St. David's is entitled to dismissal based on Esparza's failure
to serve an expert report. *See id.* § 74.351 (West Supp. 2009). We affirm the trial court's order.

## BACKGROUND

In April 2009, Esparza filed suit against St. David's, bringing claims of premises
liability and negligence in connection with injuries he suffered as a result of a fall during a

November 2008 hospital stay. According to Esparza's live pleading, while a patient at St. David's, he slipped on a transient substance on the floor of his hospital room and injured himself. Esparza alleged that shortly before his fall, a nurse had used a gelatinous substance to conduct sonogram scans on his abdomen. Esparza then observed the nurse shaking her hands as she walked to the restroom facilities, causing some of the gelatinous substance to fall from her hands to the floor. Esparza further alleged that after the nurse left his room, he got up to go to the restroom and slipped on a substance on the floor, which he believed to be the same gelatinous substance used during his sonogram.

In response to Esparza's petition, St. David's filed a motion to dismiss under chapter 74, arguing that Esparza's negligence and premises liability claims were in fact health care liability claims subject to the statutory requirement that an expert report be served on the parties within 120 days of the petition being filed. *See id.* (requiring dismissal on motion of defendant health care provider if expert report is not served as required). It is undisputed that Esparza did not serve St. David's with an expert report in connection with his claims. The trial court denied the motion to dismiss, and this appeal followed.

**STANDARD OF REVIEW**

Generally, we review a trial court's order granting or denying a motion to dismiss for failure to timely file a section 74.351(a) expert report under an abuse-of-discretion standard. *See Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.). However, when the issue presented is purely a question of law, we apply a de novo standard of review. *See Holguin v. Laredo Reg'l Med. Ctr., L.P.*, 256 S.W.3d 349, 352 (Tex. App.—San Antonio 2008,

2

no pet.).  Because the issue of whether Esparza's claims represent health care liability claims is a question of law, we will review the trial court's ruling de novo.  *See Lee v. Boothe*, 235 S.W.3d 448, 451 (Tex. App.—Dallas 2007, pet. denied).

## DISCUSSION

In a single issue on appeal, St. David's argues that the trial court erred in determining that Esparza's claims for negligence and premises liability did not constitute health care liability claims.  When the essence of a suit is a health care liability claim, a plaintiff cannot avoid the requirements of chapter 74 by recasting his claims as another cause of action.  *See Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004) (applying predecessor statute).  The statute defines "health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (West 2005).  Thus, any alleged departure from accepted standards of medical care, health care, or safety or professional or administrative services "directly related to health care" represents a health care liability claim.  *Id.*  In determining whether a claim is a health care liability claim, we look to whether "the act or omission alleged in the complaint is an inseparable part of the rendition of health care services."  *Rose*, 156 S.W.3d at 544.

Both parties cite to *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842 (Tex. 2005), in support of their respective positions.  In *Rubio*, the supreme court held that a nursing

3

home resident's claims based on the nursing home's failure to protect her from sexual assault by another resident were health care liability claims subject to the predecessor statute to chapter 74. *Id.* at 849. In reaching this conclusion, the court stated that the nursing home's supervision of the plaintiff and the resident who assaulted her was "inseparable from the health care and nursing services provided." *Id.* After describing the services expected of a nursing home, including the supervision and monitoring of its residents, the court stated, "This dispute between the parties is, at its core, over the appropriate standard of care owed to this nursing home resident; what services, supervision, and monitoring were necessary to satisfy the standard; and whether such specialized standards were breached." *Id.* at 850. The court also found it significant that testimony from an expert in the health care field would be necessary to determine the appropriate number, training, and certifications of medical professionals necessary to care for and protect patients from injury by other residents. *See id.* at 851. We find the present case to be distinguishable from *Rubio* in that no specialized standard of care is implicated here and no expert testimony would be necessary to prove Esparza's claims.

The supreme court revisited the issue of identifying healthcare liability claims in *Marks v. St. Luke's Episcopal Hospital*, ___ S.W.3d ___, No. 07-0783, 2009 Tex. LEXIS 636 (Tex. Aug. 28, 2009). In *Marks*, the court expressly rejected the notion that "any patient injury negligently caused by an unsafe condition at a health care facility" represents a health care liability claim, holding instead that a health care liability claim exists "when the unsafe condition . . . is an inseparable or integral part of the patient's care or treatment." *Id.* at *10-11. In determining whether a claim is inseparable from the patient's care or treatment, relevant factors include (1) whether medical expert testimony might be necessary to prove the claim, (2) whether a specialized standard

4

of care in the health care community would apply to the alleged circumstances, and (3) whether the negligent act involves medical judgment related to the patient's care or treatment. *Id.* at *11-12. Based on these factors, the court held that a patient's claim that hospital staff negligently assembled his hospital bed, causing him injury, was not a health care liability claim. *Id.* at *20 ("[W]hen a piece of hospital equipment is unrelated to any professional judgment and is merely incidental to the patient's care, its alleged unsafe condition does not implicate [the predecessor statute to chapter 74].").[1]

Similarly, Esparza's claims involve no professional judgment, require no expert testimony to establish liability, and are merely incidental to his medical care. Despite St. David's arguments to the contrary, it is immaterial whether the nurse violated a standard of care by using excessive amounts of lubricating gel in performing the sonogram scan, or whether she violated the standard of care for infection control by failing to properly dispose of the gel. Even if the applicable standards of care permitted the use of unlimited amounts of lubricating gel in performing sonogram scans and placed no requirements whatsoever on the proper disposal of substances that come in direct contact with a patient's body, Esparza could conceivably prove his claims for negligence and premises liability.[2] Furthermore, unlike the plaintiff in *Rubio*, Esparza was not under the supervision

[1] The court noted that under some circumstances, the assembly or use of a hospital bed might involve professional judgment, such as when a patient's condition calls for side rails or other restraints. *Marks v. St. Luke's Episcopal Hospital*, ___ S.W.3d ___, No. 07-0783, 2009 Tex. LEXIS 636, at *19-20 (Tex. Aug. 28, 2009). In that case, a claim of negligence could potentially be considered a health care liability claim. *Id.*

[2] For that matter, Esparza does not allege that the nurse used an excessive amount of gel in performing the medical procedure. His petition simply states, "The bladder scan imaging test required the use of copious amounts of a gelatinous substance."

5

or care of any medical professional at the time he slipped and fell, nor does he allege that the hospital failed to properly monitor and supervise him as a patient. He simply alleges that his injuries were caused by a dangerous condition—the slippery floor. The nurse's alleged negligence in failing to remedy that dangerous condition required no professional judgment and was merely incidental to the sonogram procedure that she had previously performed. No expert testimony is necessary to establish that slipping and falling on a slippery floor can cause personal injuries. As a result, we hold that Esparza's claims for negligence and premises liability are not health care liability claims subject to the expert report requirement of chapter 74. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351.

This holding is consistent with similar opinions from our sister courts of appeals. In *Harris Methodist Fort Worth v. Ollie*, the court held that a hospital patient's premises liability claim based on her fall on a "slippery wet floor" was not a health care liability claim because the acts of cleaning the floor and failing to warn the patient of its slippery condition were not inseparable from the rendition of medical services and the accepted standards of safety within the health care industry. 270 S.W.3d 720, 726-27 (Tex. App.—Fort Worth 2008, pet. filed). Similarly, the court in *Shults v. Baptist St. Anthony's Hospital Corp.*, held that a patient's negligence and premises liability claims based on injuries he sustained from stepping on a sharp paint chip on the hospital bathroom floor were not health care liability claims, stating, "We do not believe that the presence of a sharp paint chip in the shower of Shults's hospital room could be considered in any way an inseparable part of the medical services rendered to Shults." 166 S.W.3d 502, 505 (Tex. App.—Amarillo 2005, pet. denied). Finally, in *Dual D Healthcare Operations, Inc. v. Kenyon*, the court held that claims based on a patient's fall in a nursing home after workers had stripped and waxed the floors were not

6

health care liability claims because the plaintiff did not allege the breach of any safety standard related to medical care. 291 S.W.3d 486, 489 (Tex. App.—Dallas 2009, no pet.). Esparza, like the plaintiffs in *Ollie*, *Shults*, and *Kenyon*, has made no allegation that St. David's breached a safety standard directly related to medical care. As a result, we overrule the point of error raised by St. David's on appeal and affirm the trial court's order.

## CONCLUSION

We affirm the trial court's order denying the motion to dismiss.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   May 13, 2010

7